Tim Roberts, Esq.
DOOLEY ROBERTS & FOWLER LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Corps Drive
Tamuning, Guam 96913
Telephone No. (671) 646-1222
Facsimile No. (671) 646-1223
roberts@guamlawoffice.com

Bridget Ann Keith
SUPERIOR COURT OF GUAM
Guam Judicial Center
120 W. O'Brien Drive, Suite 300
Hagåtña, Guam 96910
Telephone No. (671) 475-3526
Facsimile No. (671) 477-3184
akeith@mail.justice.gov.gu

Attorneys for Defendant
Superior Court of Guam



**FILED**
DISTRICT COURT OF GUAM

APR 27 2009 *ds*

**JEANNE G. QUINATA**
**Clerk of Court**

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| DEBBIE ANN REYES PEREZ,<br><br>Plaintiff,<br><br>vs.<br><br>SUPERIOR COURT OF GUAM,<br><br>Defendant. | CIVIL CASE NO. CV08-00007<br><br><br>**MEMORANDUM**<br>**IN SUPPORT OF MOTION**<br>**FOR SUMMARY JUDGMENT** |

**ORIGINAL**

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE NO(S).**

*Accord Courtney v. Landair Transport, Inc.*, 227 F.3d 559 (6th Cir. 2000) ................................ 11

*Adusumilli v. City of Chicago*, 164 F.3d 353 (7th Cir. 1998) ........................................................ 14

*Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83 (D.D.C. 2007) ........................................... 14

*Alfano*, 294 F.3d at 374 ................................................................................................................ 18

*Avdyli v. Barnhart*, 2007 WL 57601 *15 (N.D. Ill. Jan. 3, 2007) ........................................... 13, 17

*Baugham v. Battered Women, Inc.*, 211 Fed. Appx. 432 (6th Cir. 2006) ............................... 13, 16

*Best v. Cal. Dep't of Corr.*, 21 Fed. Appx. 553 (9th Cir. 2001) ..................................................... 12

*Bishop v. National R.R. Passenger Corp.*, 66 F.Supp. 2d 650 (E.D. Pa. 1999) ........................... 15

*Black v. Zaring Homes, Inc.*, 104 F.3d 822, 823 (6th Cir.1997) ................................................... 15

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) ......................................................... 7, 8, 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................................. 7

*Darville v. Arkansas Dep't of Human Servs.*, 2007 WL 990604 *2
   (E.D. Ark. Apr. 2, 2007) ............................................................................................................ 15

*Dick v. Phone Directories Company, Inc.*, 397 F.3d 1256 (10th Cir. 2005) ................................ 18

*Eldredge v. Carpenters 46 Northern Cal. Counties Joint Apprenticeship
   and Training Comm.*, 833 F.2d 1334 (9th Cir. 1987) ................................................................. 7

*Faragher v. City of Boca Raton*, 524 U.S. 775 (U.S. 1998) ......................................... 8, 10, 16, 18

*Glovinsky v. Cohen*, 983 F. Supp. 1 (D.D.C. 1997) ...................................................................... 14

*Gonzalez v. Kahan*, 1996 WL 705320 *4 (E.D.N.Y. Nov. 25, 1996) .......................................... 15

*Greenwood v. Delphi Auto. Sys.*, 257 F. Supp. 2d 1047 (S.D. Ohio 2003) .................................. 11

*Guerrieri v. Town of Geneva*, 2009 WL 349287 *3 (W.D.N.Y. Feb. 5, 2009) ............................ 15

i

*Hardage v. CBS Broad, Inc.*, 427 F.3d 1177, 1187-1188
  mod. o.g. 433 F.3d 672 (9th Cir. 2006)..................................................................................... 11

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)........................................................................ 13, 18

*Hostetler v. Quality Dining, Inc.*, 218 F.3d 798 (7th Cir. 2000)........................................................ 9

*Inganamorte v. Cablevision Sys. Corp.*, 2006 WL 2711604 *20
  (E.D.N.Y. Sept. 21, 2006)................................................................................................... 14, 18

*Kolstad v. American Dental Ass'n.*, 527 U.S. 526 (1999)............................................................... 19

*Lamar v. Nynex Service Co.*, 891 F.Supp. 184 (S.D.N.Y. 1995).................................................... 15

*Lindblom v. Challenger Day Program, Ltd.*, 37 F. Supp. 2d 1109 (N.D. Ill. 1999)..................... 14

*Lulis v. Barnhart*, 252 F. Supp. 2d 172 (E.D. Pa. 2003)................................................................ 14

*Mangum v. Town of Holly Springs*, 551 F. Supp. 2d 439 (E.D.N.C. 2008) ........................... 12, 17

*Mast v. IMCO Recycling of Ohio*, 56 Fed. Appx. 116 (6th Cir. 2003)......................................... 13

*McKinney v. Boyd Gaming Corp.*, 12 Fed. Appx. 599 (9th Cir. 2001) .......................................... 6

*Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999) .......................................................... 15

*Oncale v. Sundowner Offshore Svcs. Inc.*, 523 U.S. 75 (1998) ......................................... 12, 17, 18

*Perry v. Harris Chernin, Inc.*, 126 F.3d 1010 (7th Cir. 1997)...................................................... 13

*Porter v. Cal. Dep't of Corr.*, 419 F.3d 885 (9th Cir. 2005)......................................................... 12

*Reganick v. Southwestern Veterans' Ctr.*, 2008 WL 768423
  (W.D. Pa. March 20, 2008)...................................................................................................... 14

*Santa Cruz v. Snow*, 402 F. Supp. 2d 113 (D.D.C. 2005)............................................................ 14

*Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871 (5th Cir. 1999)................................... 15

*Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533 (10th Cir. 1994) ................................................... 18

*Swanson v. Livingston County*, 270 F. Supp. 2d 887 (E.D. Mich. 2003),
  aff'd 121 Fed. Appx. 80 (6th Cir. 2005) ................................................................................. 13

*Swenson v. Potter*, 271 F.3d 1184 (9th Cir. 2001)............................................................... 8, 9, 16

ii

*Taylor v. Illinois*, 2000 WL 44996 *15 (N.D. Ill. Jan. 11, 2007) .......................................... 12, 17

*Wilkinson v. Potter*, 236 Fed. Appx. 892 (5th Cir. 2007) ............................................................ 15

*Williams v. General Motors Corp.*, 187 F.3d 533 (6th Cir. 1999)................................................. 18

## STATUTES

42 U.S.C. § 2000e-2(a)(1).......................................................................................................... 7, 18

Title VII of the Civil Rights Act of 1964..................................................................................... 7

## RULES

Federal Rules of Civil Procedure, Rule 56(c) ............................................................................. 6

## MISCELLANEOUS

3 L. Larson and A. Larson, *Employment Discrimination*, §46.07[4][a],
    p. 46-101 (2d ed. 1998)........................................................................................................... 8

Restatement (Second) of Agency, § 217(c) ................................................................................ 19

Restatement (Second) of Torts § 909.......................................................................................... 19

## I. INTRODUCTION

Plaintiff Debbie Perez is a marshal employed by the Superior of Court of Guam. She alleges in this Title VII lawsuit that Alan Ecle, then a Superior Court Marshal, sexually harassed her on the job for almost four years, between July 1, 2002 and April 18, 2006. Today, Mr. Ecle is a Sergeant in the United States Army deployed in Afghanistan.

Perez alleges that the harassment began in 2002, but she did not report anything until February 16, 2006, when she first spoke to Superior Court EEO officer John Taijeron. Taijeron informed Perez that she had a right to file an EEOC complaint and advised her of other rights and remedies that were available. Perez responded by telling the Taijeron that she did not want to file an EEOC complaint. She eventually filed an EEOC complaint on April 18, 2006. The next day, the Court placed Sgt. Ecle on administrative leave pending an investigation. Sgt. Ecle's application for active duty status had previously been approved by the Army, and his re-enlistment was scheduled for May 24, 2006. Because of this, Sgt. Ecle decided to simply resign from the Superior Court Marshal's Service on May 1, 2006.

The EEOC declined to file a lawsuit on Perez's behalf and issued her a "right to sue" letter instead. Perez then filed this lawsuit on June 8, 2008. Sgt. Ecle was deployed in combat in Iraq at the time. After returning from combat duty, Sgt. Ecle was deposed in Fort Drum, New York, where he is currently stationed At his deposition, which occurred only weeks before his scheduled departure to Afghanistan, Sgt. Ecle adamantly denied that any harassment ever took place.

Perez does not allege that any Superior Court supervisor harassed her, claiming instead that the Superior Court was negligent in failing to take any action after her conversation with

1

Taijeron on February 16, 2006. As explained below, the standard for determining an employer's liability in a Title VII harassment complaint turns entirely on whether the alleged harasser was the plaintiff's supervisor or a co-worker. Harassment by a supervisor triggers strict liability, subject to certain defenses. Harassment by a co-worker triggers liability only if the employer was negligent. An employer can only be held liable for a co-employee's harassment once (1) it knows or should know about the harassment, and (2) it responds to the harassment in an unreasonable way. On this motion, it is undisputed that the Superior Court was not on notice of any alleged harassment until February 16, 2006.

As seen below, an employer cannot be liable for co-worker harassment before it knows about it. The two month period between February 16, 2006 and April 18, 2006 therefore supplies Perez's entire window of available damages.

There are five issues raised by this motion for summary judgment. The Court must first decide, as just mentioned, whether the Superior Court can legally be liable for anything that occurred before February 16, 2006, when Perez first reported the alleged harassment. Second, the Court must determine whether the Superior Court's response to the alleged harassment was unreasonable. Third, assuming the Court believes the Superior court's response to the alleged harassment was unreasonable, the Court must rule on whether Sgt. Ecle's alleged post-February 16, 2006 conduct was legally "severe or pervasive" enough to violate Title VII. In this regard, although Perez testified that some of Sgt. Ecle's unreported conduct in 2002, 2003 and 2005 consisted of physical touching, she admitted at her deposition that the last time Sgt. Ecle physically touched her was well before she first reported the harassment on February 16, 2006. All Sgt. Ecle allegedly did between February 16, 2006 and April 18, 2006, according to Perez's own sworn deposition testimony, was "look" at her on a handful of occasions. As established in section V.C., below at p. 12, as a matter of law Sgt. Ecle's conduct was not "severe or pervasive"

2

enough to give rise to a right to sue under Title VII for sexual harassment. As courts have stressed, Title VII was never intended to "regulate civility in the workplace." Fourth, the Court must decide whether anything that Sgt. Ecle allegedly did between February 16, 2006 and April 18, 2006 was, in the words of Title VII itself, "because of ... sex", and not for any other reason. Finally, as the Court will quickly see, Perez's request for punitive damages fails as a matter of law. Under established United States Supreme Court decisions, punitive damages are not available against an employer in a Title VII cases when there is no evidence that any of the employer's supervisors harassed anyone.

## II.     UNDISPUTED FACTS.

Sgt. Ecle's purported harassment of Perez allegedly started on July 1, 2002, when Perez claims she and Ecle were returning from an attempt to go to lunch together at the Top of the Mar, only to find it closed. At her deposition, Perez was unable to put any exact dates on any other claimed harassment, and for some incidents she could not even identify what month or year it happened. It is undisputed that Sgt. Ecle did not physically touch Perez after "the holidays" in 2005. Deposition of Debbie Perez ("Perez Depo."), p. 57:8-25; 58:1-13. She was absolutely positive about this date. *Id.* at p. 58:4-13. It is also undisputed that she never told any Superior Court supervisor that Sgt. Ecle was harassing her until February 16, 2006.[1] Perez Depo., pp. 56:25; 57:1; 63:17-21; 64:1-25; 1-9. On that day, Perez told Superior Court EEO designee John Taijeron that Sgt. Ecle was harassing her. Taijeron responded by telling Perez that she had

---

[1] Perez did say she told co-marshal Jennifer Cunha about the alleged harassment sometime in "late 2003". Perez Depo., p. 48:3-25; 49, 50:1-7. Perez never told anyone else -- not her boyfriend at the time, former Marshal Al Certeza, any of her five previous husbands, her six children, her numerous co-marshals and co-workers, or her parents, either. Id., pp. 58:22-25; 59:1-10. There is no evidence that Jennifer Cunha ever said anything to anyone else at the court about what Perez had told her.

3

"grounds for an EEO complaint." Perez Depo., p. 72:19-20. According to Perez, however, "I told him that I didn't want to file any EEO complaint; that I wanted him to stop". Perez Depo., pp. 72:19-22; 66:8-12; 67:6-16. She did not tell Taijeron that she wanted Sgt. Ecle investigated. Perez Depo., p. 66:6-7. According to Perez, Taijeron told her he would let Chief Marshal Pito Cruz know what was going on. Perez Depo., pp. 72:23-25; 73:1. Taijeron himself testified that Perez "insisted she didn't want to make a formal complaint at that time." Deposition of John Taijeron ("Taijeron Depo."), p. 10:7-9; see also, Taijeron Depo., p. 11:2-15; 20:17-22. Taijeron also referred Perez to the Superior Court's actual EEO Officer, Linette "Buffy" Perez, to meet with her and file an official complaint. Taijeron Depo., p. 20:17-25; 21:1-2; 19:23-25; 20:1-5. Perez never did. Taijeron kept contemporaneous handwritten notes of the conversation. Taijeron Depo., Exh. a. He testified that Perez never told him she wanted him to stop the alleged harassment. Taijeron Depo., p. 51-53; 54:1-12. Perez "hoped" that Taijeron would counsel Sgt. Ecle, and said that she "really didn't know what to expect at that time, but I wanted somebody to know that these things were happening ..." *Id.*, at p. 67:21-23. Taijeron gave Perez his Superior Court radio number and told her "if anything, call me", and that "if any incident should occur and you need me right away, you need to call me". Perez Depo., p. 75:8-16.

Perez eventually filed an official complaint of sexual harassment on April 18, 2006. See generally, Perez Depo., pp. 75-79.[2]

---

[2] On May 10, 2006, when things were still fresh in her mind, Perez filed a sworn declaration in a Superior Court case against Sgt. Ecle in which she said that that she first reported the harassment on April 18, 2006, *not* February 16, 2006: "I finally summoned up the courage to come forward and report this untoward conduct to my superior, as well as GPD. A subject incident report was filed on 4/18/06 ...". Perez Depo., pp. 69:12-25; 70-71; Exhibit 3. There is no mention in this May 10, 2006 Declaration of any report being made on February 16, 2006.

4

On February 16, 2006, the first day Perez spoke to Taijeron, Sgt. Ecle had just begun extended military leave, and Perez was on leave by the time he came back to work. Declaration of Anthony A. Meno ("Meno Dec.") ¶ 4. Perez and Sgt. Ecle did see each other at work until more than a month later, on March 20, 2006. Meno Dec. ¶ 4. Between that date and April 18, 2006, Sgt. Ecle did not touch Perez or have physical contact with her at all. He did not even speak to her. Perez Depo., pp. 75:1-4; 74:10-13. All he allegedly did was give her "threatening looks". Perez Depo., p. 74:10-13. There was also some "standing in the hallway" (Perez Depo., p. 74:12-13), which was a reference to Perez's earlier testimony that when she would walk by Sgt. Ecle in the hallway he would "lean on the hallway with his arms crossed and just look at me and I would turn around and go the other way". *Id.* at p. 64:3-8.

After Perez returned from leave on March 20, 2006, Perez and Sgt. Ecle only worked at the Superior Court on the same day on twelve (12) full days and three (3) half days. Meno Dec., ¶ 4. Even by Perez's estimation, Sgt. Ecle only stared at her "a couple times a week" during this time period. Perez Depo., p. 94:4-20. What "weeks" were these? During the week of March 20, 2006, they worked at the court at the same time for three and one half days. Meno Dec., ¶ 4, Exhibits 1 and 2. In the last week of March, they worked at the court at the same time on a single day. *Id.* In the first week of April, they worked at the court on the same day for three and one half days, and in the second week in April, they worked at the same time on four days. As the third week in April started, Perez lodged her EEOC complaint. Perez and Ecle never worked a single full week together during this time frame. *Id.*

5

Moreover, on the days they were at the Superior Court at the same time, their work assignments kept them physically separated. During the twenty nine (29) day period between March 20, 2006 and April 18, 2006, Perez was assigned to the Security Services Section and Sgt. Ecle was assigned to the Criminal Services Section. Declaration of Chief Deputy Joseph Leon Guerrero ("Guerrero Dec.") ¶¶ 3, 4. When reporting to work for these assignments, the two marshals would have reported to different offices in the Marshals' division and spent their days in basically different areas. Guerrero Dec., ¶¶ 5, 6. Based on the parties' work schedules and job assignments during these few short weeks, at most Sgt. Ecle could only have seen Perez a handful of times, let alone "stare" at her. Meno Dec., ¶ 7. In any event, this handful of alleged stares forms the entire basis of Perez's lawsuit.

As mentioned above, Sgt. Ecle's was previously scheduled to rejoin the Army on May 24, 2006. Deposition of Alan Ecle ("Ecle Depo."), p. 33:3-20. When he was placed on administrative leave by the Superior Court pending an investigation, he resigned from the Marshal's Service effective May 1, 2006. *Id.*

## III. SUMMARY JUDGMENT

The Superior Court of Guam moves for Summary Judgment on all claims in Perez's Complaint under Rule 56 of the Federal Rules of Civil Procedure. Under FRCP 56(c), the Court "shall" grant summary judgment when there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *McKinney v. Boyd Gaming Corp.*, 12 Fed. Appx. 599, 600 (9th Cir. 2001). To determine whether there are issues of material fact, the court must look at all of the evidence in the light most favorable to the non-moving party. *Eldredge v.*

6

*Carpenters 46 Northern Cal. Counties Joint Apprenticeship and Training Comm.*, 833 F.2d 1334, 1336 (9th Cir. 1987). Summary judgment is "mandatory" when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*, citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).

## IV.    EMPLOYMENT DISCRIMINATION UNDER TITLE VII.

There are essentially two categories of sexual harassment that can occur in the workplace. In one, a supervisor harasses an employee. In the other, one co-employee harasses another co-employee.

### A.    Supervisor-Employee Harassment.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Courts describe an express alteration of the terms of employment as "*quid pro quo*" harassment (i.e., sex for favors) and a constructive alteration as "hostile work environment" harassment. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998). When a supervisor sexually harasses an employee, strict liability is without proof of fault is imposed on the employer, subject to recognized affirmative defenses. There is no allegation of supervisor-employee harassment here.

7

## B.    Co-Employee Harassment.

Hundreds of federal court decisions over the last several years have explained that an employer's liability for co-worker harassment is based on a different standard than that of an employer liability for supervisor harassment. In co-worker harassment cases, a claimant must prove that the employer was actually negligent. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 759, (1998). Courts uniformly apply this rule and it is "not a controversial area." 3 L. Larson and A. Larson, *Employment Discrimination*, §46.07[4][a], p. 46-101 (2d ed. 1998). If the employer does not know and has no reason to suspect that co-worker harassment is occurring, it cannot be liable for that harassment. An employer "cannot be held liable for misconduct of which it is unaware". *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001).

Under the negligence standard governing co-worker harassment cases, the burden of proving negligence is on the employee. She must prove by a preponderance of the evidence two separate things: (1) that the employer knew or should have known of the harassment; and (2) that the employer responded unreasonably to the situation. Unless the employee can show both of these things, she cannot make out a harassment claim under federal law. Even if she can, however, only sexual harassment that is so "severe or pervasive" as to "alter the conditions of [the victim's] employment and create an abusive working environment" violates Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (U.S. 1998).

8

## V.    LAW AND ARGUMENT.

### A.    The Superior Court Cannot Be Liable For Any Harassment That Occurred Before February 16, 2006.

There is no evidence that the Superior Court knew or should have known of Sgt. Ecle's alleged harassment of Perez before February 16, 2006. Perez was aware at all times prior to that date that she was free to report the harassment, but she never did. Perez Depo., pp. 39-40; 51; 58-59; 63-64.

As mentioned above, an employer "cannot be held liable for misconduct of which it is unaware." *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001). Instead, the "employer's liability, if any, runs only from the time it 'knew or should have known about the conduct and failed to stop it.'" *Id.* citing *Ellerth*, 524 U.S. at 759. "Negligence of this nature exposes the employer not to liability for what occurred before the employer was put on notice of the harassment, but for the harm that the employer inflicted on the plaintiff as a result of its inappropriate response." *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 811 (7th Cir. 2000). For these reasons, the Superior Court cannot be held liable for anything that happened to Perez before February 16, 2006. Partial summary judgment on this issue must be granted to the Superior Court as a matter of law.

### B.    The Superior Court Did Not Act Unreasonably In Response To Perez's Report of Harassment On February 16, 2006. Even If The Court Did Breach A Duty Of Care Owed To Perez, That Breach Caused No Federally Recognized Harm To Her.

Perez testified that she told Taijeron that she did not want to file a report on the alleged harassment. She also said she told him she wanted the harassment stopped. Taijeron denied this at his deposition, and his contemporaneous handwritten notes corroborate his testimony.

9

Taijeron Depo., Exhibit A. This factual dispute is not resolvable on this motion for summary judgment. However, the reasonableness of the Superior Court's response to the claimed harassment is properly before the Court on this motion for summary judgment.

To avoid summary judgment, Perez must introduce evidence that the Superior Court acted negligently in response to her claim of harassment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998). Perez reported the harassment on February 16, 2006. That day was Sgt. Ecle's first day of military leave. He would not return to the Court for the next twenty-two (22) days, until March 13, 2006. By that time, Perez had taken a week of leave of absence. She did not return to the court until March 20, 2006. Perez's complaint alleges, in paragraph 14, that the Court was negligent because it "did nothing to separate the parties" after February 16, 2006. But the fact of the matter is, they were already separated. Nor were there any witnesses to interview. This is because Perez testified that there were never any witnesses to anything Sgt. Ecle allegedly did.

The earliest the Court could have done something to separate the two or investigate was on March 20, 2006, when they were both back at the court. But, from March 20, 2006 to April 18, 2006, Sgt. Ecle and Perez would work no more than twelve full days together. Meno Dec., ¶ 4. Even on those days, their work assignments would have kept them separated. Guerrero Dec., ¶ 5. For these reasons, the Superior Court's conduct after February 16, 2006 was not unreasonable. Perez and Sgt. Ecle were physically separated after that. Though they could have passed in the hallway, the law does not impose a duty on an employer to ensure that the parties involved cannot possibly even see each other on the employer's premises.

When an employee is vague as to what she wants done about sexual harassment, there is not a *per se* duty on the part of the employer impose discipline or take other action, when

10

monitoring the situation seems reasonable. *See Hardage v. CBS Broad, Inc.*, 427 F.3d 1177, 1187-1188 *mod. o.g.* 433 F.3d 672 (9th Cir. 2006) ("By specifically requesting the company not make use of its remedial and preventative procedures, Hardage unreasonably failed to make use of CBS's anti-harassment policies and procedures."); *Accord Courtney v. Landair Transport, Inc.*, 227 F.3d 559 (6th Cir. 2000); *Greenwood v. Delphi Auto. Sys.*, 257 F. Supp. 2d 1047, 1064-65 (S.D. Ohio 2003). That is what the Superior Court did here. It is undisputed that Perez told Taijeron on February 16, 2006, that she did not want to file an official report and that she did not want him to investigate. It is undisputed that Taijeron gave Perez his radio number and told her to call him if she needed to. At the time, the Sgt. Ecle and Perez were not even going to see each other for over a month, due to their respective extended leave schedules. After they both returned from leave as of March 20, 2006, their work schedules and their work assignments effectively kept them apart from each other for the next twenty nine days, until Sgt. Ecle was placed on administrative leave. And Perez never called Taijeron's radio number during this time. Under these circumstances, the Superior Court's conduct in monitoring the situation rather than taking action was not unreasonable. The Court should grant summary judgment in Defendant's favor.

Even if this Court cannot rule as a matter of law that the Superior Court's conduct was reasonable, and believes that the Superior Court breached a duty of care owed to Perez, it is clear that any such breach of duty did not legally or proximately cause any violation of Title VII. This is because the only thing that Sgt. Ecle allegedly did after March 20, 2006 was stare at Perez a few times. As established below, mere stares are not a violation of Title VII. For this reason, Perez's negligence cause of action fails as a matter of law. She has established, at most,

a duty of care and a breach of a duty of care. But, she has not established causation, since the Superior Court's breach, if any, did not cause Perez any federally recognized harm.

## C. As Matter of Law, Sgt. Ecle's Alleged Conduct Between February 16, 2006 And April 18, 2006 Was Not Severe Or Pervasive Enough To Constitute A Violation Of Title VII.

Here, at most, Sgt. Ecle allegedly stared at Perez only a few times over twelve or thirteen days. For Title VII purposes, and for any other purposes, for that matter, this is insignificant. People have no statutory or common law right to sue when a co-worker looks at them the wrong way. Alleged sexual harassment is actionable under Title VII only if it is so objectively "severe or pervasive" that it alters the conditions of the victim's employment and creates a hostile working environment. This issue is a matter of law for the court to decide on a motion for summary judgment. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 892 (9th Cir. 2005); *Best v. Cal. Dep't of Corr.*, 21 Fed. Appx. 553, 556 (9th Cir. 2001). In fact, virtually all of the decisions favorable to defendants in this area of the law are decided on motions for summary judgment. The consistent theme running through the reported cases is that courts do "not have a duty to regulate civility in the workplace." *Mangum v. Town of Holly Springs*, 551 F. Supp. 2d 439, 444 (E.D.N.C. 2008), citing *Oncale v. Sundowner Offshore Svcs. Inc.*, 523 U.S. 75, 81 (1998). "Although politeness, thoughtfulness and the ability to get along are all desirable qualities in social and business interactions, no law enforces these norms or makes professional dislike, disapproval or disdain, actionable." *Taylor v. Illinois*, 2000 WL 44996 *15 (N.D. Ill. Jan. 11, 2007. Rather, to fall within Title VII, the workplace must be so "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baugham v. Battered*

12

*Women, Inc.*, 211 Fed. Appx. 432, 438-439 (6th Cir. 2006) quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

There is no authority permitting a co-worker harassment claim to go to a jury based merely on "threatening looks." Defendants are granted summary judgment on these facts. For example, in *Avdyli v. Barnhart*, 2007 WL 57601 *15 (N.D. Ill. Jan. 3, 2007), the plaintiff's co-employees would walk by plaintiff's desk and "glare" at her in an intimidating manner. The court granted summary judgment to the defendant because the conduct complained of was not severe or pervasive enough to qualify for Title VII consideration in federal court. As the court in *Avdyli* explained:

> [C]onsidering the allegedly offending conduct in its totality, the court cannot conclude that it is pervasive enough to be actionable under Title VII. The actionable workplace is one that is "hellish." *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997) (citation omitted). The court does not doubt that Avdyli believed her workplace to be hellish, but the court finds that, objectively, it was not. Osborn's request for a date, placing a towel on his head, making an obscene phone call, and continually walking by Avdyli's desk unnecessarily while glaring at her were certainly unenlightened and exceedingly unprofessional actions, and the court does not take lightly Avdyli's distress at having to deal with this type of behavior at work.
>
> However, in reference to other cases, in particular those in which physical contact occurred but in which no sexual harassment was found, this court simply cannot conclude that the conduct in this case is the kind that would meet the stringent standards for establishing a hostile work environment under Title VII. (citations omitted).

*Id.* at *15-16.

In fact, the near-unanimous weight of authority holds that "staring" by a co-worker can never be "severe or pervasive" enough to amount to a Title VII violation. "Staring at someone, without more, is not generally sufficient to create a hostile work environment." *Mast v. IMCO Recycling of Ohio*, 56 Fed. Appx. 116, 123 (6th Cir. 2003); *Swanson v. Livingston County*, 270 F. Supp. 2d 887, 899 (E.D. Mich. 2003), *aff'd* 121 Fed. Appx. 80, 85 (6th Cir. 2005) ("staring at

13

someone" is insufficient to create a hostile work environment) (citing *Mast*, supra) (no violation

of Title VII where plaintiff claimed merely that "fellow co-workers were staring at or shunning

her"); *Reganick v. Southwestern Veterans' Ctr.*, 2008 WL 768423 (W.D. Pa. March 20, 2008)

(no Title VII violation where co-employee "stared" at plaintiff in the parking lot "in a manner

that intimidated and frightened" her); *Santa Cruz v. Snow*, 402 F. Supp. 2d 113, 129 (D.D.C.

2005) (co-employee "star[ed] at" plaintiff "for long periods of time," insufficiently "severe or

pervasive"), citing *Glovinsky v. Cohen*, 983 F. Supp. 1, 4 (D.D.C. 1997); *Inganamorte v.

Cablevision Sys. Corp.*, 2006 WL 2711604 *20 (E.D.N.Y. Sept. 21, 2006) (defendants "stared"

at plaintiff and other women "to such a degree that [P]laintiff and other females present felt

uncomfortable;" summary judgment granted; no hostile work environment; conduct not "severe

or pervasive enough to create an objectively hostile or abusive work environment"); *Adusumilli

v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. 1998) ("staring" and workplace teasing,

ambiguous comments, attempts to make eye contact, and four isolated incidents in which a co-

worker briefly touched the plaintiff's fingers, arm, or buttocks did not amount to a hostile work

environment); *Lindblom v. Challenger Day Program, Ltd.*, 37 F. Supp. 2d 1109, 1115 (N.D. Ill.

1999) (co-worker "stared at" plaintiff, touched her knee five times, touched her shoulder ten

times, stood close to her, asked her about her weekend, and fondled her at a private party;

insufficiently "severe or pervasive conduct" to support a federal harassment claim); *Lulis v.

Barnhart*, 252 F. Supp. 2d 172, 177 (E.D. Pa. 2003) (specific instances of "staring" or looking at

the plaintiff in a suggestive manner, four touching incidents, and four instances of sitting too

closely or following the plaintiff did not create a severe or pervasive hostile working

environment); *Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 98 (D.D.C. 2007) ("staring"

along with five other discrete acts over a two-year period, coupled with infrequent inappropriate

14

comments, "do not reach the level of 'severe' or 'extremely serious' conduct that is required by the Supreme Court to state a claim for hostile-work-environment discrimination"); *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999) (intermittent "stares" and arm-touching that "occurred intermittently for a period of time" were not severe enough to warrant federal relief under Title VII); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247 (11th Cir. 1999) (co-worker's "staring" at plaintiff in a "very obvious fashion" and his "constant following," along with other annoying acts, was not "severe or pervasive;" no Title VII violation); *Wilkinson v. Potter*, 236 Fed. Appx. 892, 894 (5th Cir. 2007) (co-worker's daily "staring," his rude and offensive behavior, his unnecessary appearances in plaintiff's work area, and his following her around the workplace did "not establish the existence of an objectively hostile work environment"); *Gonzalez v. Kahan*, 1996 WL 705320 *4 (E.D.N.Y. Nov. 25, 1996) ("staring" at plaintiff, putting hands on plaintiff's shoulders and asking her to go out was not severe enough to constitute hostile work environment); *Lamar v. Nynex Service Co.*, 891 F.Supp. 184, 185 (S.D.N.Y. 1995) (co-employee's "staring" at plaintiff, touching plaintiff's hand, and telling her she looked "hot" was all "too mild and innocuous to constitute sexual harassment"); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 823-24, 826 (6th Cir.1997) (insufficient evidence to support hostile environment claim when employee made rude comments); *Guerrieri v. Town of Geneva*, 2009 WL 349287 *3 (W.D.N.Y. Feb. 5, 2009) (no Title VII violation where supervisor was invading her personal space and "staring" at her breasts on an unspecified number of occasions; not sufficiently "severe or pervasive"); *Bishop v. National R.R. Passenger Corp.*, 66 F.Supp. 2d 650, 664 (E.D. Pa. 1999) ("staring" and "leering" was not severe enough to create a hostile work environment); *Darville v. Arkansas Dep't of Human Servs.*, 2007 WL 990604 *2 (E.D. Ark. Apr. 2, 2007) ("stares" and "mean looks" were not actionable under Title VII).

15

There are hundreds of other reported cases holding that uncivil conduct like Perez alleges in this case will not survive a motion for summary judgment. Staring at someone on the job is simply not actionable. As a matter of law, Sgt. Ecle's alleged harassment was not "objectively and subjectively offensive, one that a reasonable person would find hostile or abusive". *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (U.S. 1998). From an objective point of view, Sgt. Ecle's conduct was insufficiently "severe or pervasive" enough to create a hostile working environment. That is, the work environment was not "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baugham v. Battered Women, Inc.*, 211 Fed. Appx. 432, 438-439 (6th Cir. 2006).

From a subjective point of view, the Court should not permit Perez to use what she claims occurred before February 16, 2006 to bootstrap any claim that her subjective fear of Sgt. Ecle after that date was reasonable. First, the Superior Court did not know and had no reason to know about Sgt. Ecle's conduct before February 16, 2006. It therefore cannot be made to pay damages based on that conduct. *Swenson v. Potter*, 271 F.3d at 1192. Allowing Perez to bootstrap what happened before that date to what happened after that date would impose liability on the Superior Court indirectly for that which it cannot be liable for directly.

Moreover, assuming Perez is telling the truth about what happened before February 16, 2006, there are only two potentially responsible persons. These are Sgt. Ecle and Perez herself, for failing to report his conduct to her supervisors. Allowing Perez to use what happened before February 16, 2006 to bolster her post-February 16, 2006 claims would reward her for her own contributory negligence in failing to report Sgt. Ecle to her Superior Court supervisors.

16

Allowing her to bootstrap unreported conduct would also serve as an inducement for claimants to intentionally delay reporting harassment in an effort to increase the value of their claims.

The Court should grant Defendant's motion for summary judgment on this issue. In doing so, the Court would not be condoning Sgt. Ecle's conduct, if in fact that conduct even occurred. The Court would merely be holding, consistently with other courts, that rude stares, while certainly uncivil if they actually happened, are not sufficiently severe or pervasive enough to constitute a Title VII violation. In contrast, a denial of Defendant's summary judgment motion would simply encourage people to file a federal lawsuit whenever they feel that co-worker is looking at them the wrong way.

### D. There Is No Evidence Of Any Harassment "Because of Sex".

Title VII does not prohibit all verbal or physical harassment in the workplace. "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimina[tion] . . . because of . . . sex."). *Oncale v. Sundowner Offshore Svcs. Inc.*, 523 U.S. 75, 81 (1998); *Avdyli v. Barnhart*, 2007 WL 57601 *15 (N.D. Ill. Jan. 3, 2007). Courts do "not have a duty to regulate civility in the workplace." *Mangum v. Town of Holly Springs*, 551 F. Supp. 2d 439, 444 (E.D.N.C. 2008), citing *Oncale*, 523 U.S. at 81. Again, although certainly "politeness, thoughtfulness and the ability to get along are all desirable qualities in social and business interactions, no law enforces these norms or makes professional dislike, disapproval or disdain, actionable." *Taylor v. Illinois*, 2000 WL 44996 *15 (N.D. Ill. Jan. 11, 2007). Here, all Perez can say is that Sgt. Ecle looked at her in a way she did not appreciate a handful of times after she returned from leave on March 20, 2006. This is simply not the kind of workplace conduct that Title VII protects against. Title VII is not intended to serve as a "general civility

17

code." *Faragher*, 524 U.S. at 788. To withstand summary judgment, a plaintiff must show that but for her gender she would not have been harassed. See *Williams v. General Motors Corp.*, 187 F.3d 533, 545 (6th Cir. 1999). Thus, "'[i]f the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment.'" *Dick v. Phone Directories Company, Inc.*, 397 F.3d 1256, 1263 (10th Cir. 2005) (quoting *Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 538 (10th Cir. 1994)).

In *Inganamorte v. Cablevision Sys. Corp.*, 2006 WL 2711604, *20 (E.D.N.Y. Sept. 21, 2006) discussed above under the "severe or pervasive" requirement, there was a second reason the defendants' motion for summary judgment was granted. After first granting summary judgment on the ground that the conduct complained of was insufficiently hostile to make out a federal claim regardless of sex, the court continued:

> Second, there is nothing in the record to indicate that the alleged conduct was made on the basis of gender. See *Alfano*, 294 F.3d at 374; see also *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion]. . . because of . . . sex.' . . . . 'The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'") (quoting 42 U.S.C. § 2000e-2(a)(1) and *Harris*, 510 U.S. at 25). In this regard, the only gender-based conduct Plaintiff cites is Darvassy's alleged propensity to stare. The only evidence she proffers in this regard is her own affidavit. Based on the present record, the Court finds that this conduct, even if it occurred, is insufficient to raise a genuine issue of fact as to this claim.

2006 WL 2711604 at *20.

Another way of looking at the facts of this case is this: If Perez had sought and obtained a restraining order against Sgt. Ecle in this case, what would the court's order look have looked like? "The Defendant is hereby ordered to stop looking at Plaintiff in ways that she does not appreciate?" Viewing Sgt. Ecle's alleged conduct objectively, as the Court must on this motion

18

for summary judgment, on the undisputed facts of this case how could a rational jury award damages for sexual discrimination? To do this, the jury would have to find (1) the way Sgt. Ecle looked at Perez was objectively threatening, (2) Perez subjectively believed Sgt. Ecle's stares were threatening; (3) the way Sgt. Ecle looked at Perez was subjectively intended by him to be threatening, and (4) the way Sgt. Ecle looked at Perez was subjectively motivated by sexual desire, i.e., he looked at Perez was "because of ... sex", and not for some other reason, such as personal dislike. This would all be rank speculation, which juries are not supposed to engage in.

## E.     Punitive Damages Are Unavailable In A Co-Employee Harassment Negligence Case.

In *Kolstad v. American Dental Ass'n.*, 527 U.S. 526, 529-230 (1999), the Supreme Court adopted the Restatement's "strict limits" on vicarious liability for punitive damages. It held, in accordance with the Restatement (Second) of Torts, that the employer can be liable if it (1) authorized the wrongful act; (2) the agent was unfit and the principal was reckless in employing him; (3) the agent was acting in a managerial capacity and within the scope of his employment; or (4) the principal or a managerial agent ratified the wrongful act. Restatement (Second) of Torts § 909; *see also*, Restatement (Second) of Agency, § 217(c). In doing so, the Supreme Court rejected the theory that an employer is vicariously liable for punitive damages based solely on the employee's apparent authority or acts committed within the scope of her employment. Instead, the Supreme Court held that the employer must be culpable in some degree in order to have the employee's knowledge and acts imputed to it for punitive damage liability. "[I]t is improper ordinarily to award punitive damages against one who himself is personally liable only vicariously." 527 U.S. at 544, quoting Rest. (2d) Torts § 909. These facts are not present here.

19

## VI. CONCLUSION

The Superior Court cannot be held liable for anything that happened before February 16, 2006, when Perez first reported the alleged harassment to Taijeron. After February 16, 2006, the Superior Court's conduct was not unreasonable. Perez complains that the Court should have separated her from Sgt. Ecle, but that is in fact what happened for all practical purposes. Even when they may have seen each other, as a matter of law, Sgt. Ecle's alleged "stares" were insufficiently "severe or pervasive" to constitute a violation of Title VII. Moreover, there is no evidence that he stared at Perez because she was a woman. Finally, punitive damages are unavailable under the facts of this case, since there is no evidence that any of the employer's supervisors personally harassed anyone.

DOOLEY ROBERTS & FOWLER LLP

Dated: 4-22-09     By: _____

**TIM ROBERTS, Esq.**
Attorney for Defendant
Superior Court of Guam

SUPERIOR COURT OF GUAM

Dated: 9-17-09     By: _____

**B. ANN KEITH, Esq.**
Attorney for Defendant
Superior Court of Guam

20