**TEKER TORRES & TEKER, P.C.**
SUITE 2A, 130 ASPINALL AVENUE
HAGÁTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4
FACSIMILE: (671) 472-2601

**FILED**
**DISTRICT COURT OF GUAM**

MAY 2 6 2009

**JEANNE G. QUINATA**
**Clerk of Court**

Attorneys for Plaintiff
 *Debbie Ann Reyes Perez*

IN THE DISTRICT COURT OF GUAM

----------

DEBBIE ANN REYES PEREZ,      )    CIVIL CASE NO. CV08-00007
                             )
         Plaintiff,          )
                             )    **PLAINTIFF'S OPPOSITION TO**
        vs.             )    **DEFENDANT'S MOTION**
                             )    **FOR SUMMARY JUDGMENT**
SUPERIOR COURT OF GUAM,      )
                             )
        Defendant.       )

----------

ORIGINAL

# TABLE OF AUTHORITIES

Page Nos.

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248, 250 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Avdyli v. Barnhart*,
Not Reported in F.Supp. 2d, 2007 WL 57601, pg 12 (N.D. Ill. 2007) . . . . . . . . . . . . . . . . . . . . 15

*Burlington Industries, Inc. v. Ellerth*,
524 U.S. 742, 759 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Burns v. McGregor Elec. Indus., Inc.*,
995 F.2d 559, 564 (8th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*County of Tuolumne v. Sonora Cmty. Hosp.*,
236 F.3d 1148, 1154 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Craig v. M & O Agencies, Inc.*,
496 F.3d 1047, 1055 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cross v. Alabama Dep't of Mental Health & Mental Retardation*,
49 F.3d 1490, 1495 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Curde v. Xytel Corp.*,
912 F.Supp. 335, 340 (N.D. Ill. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Doe v. R.R. Donnelley & Sons*,
42 F.3d 439, 443 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Draper v. Coeur Rochester, Inc.*,
147 F.3d 1104, 1109 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ellison v. Brady*,
924 F.2d 872, 879, 882 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12, 15

*Faragher v. City of Boca Raton*,
524 U.S. 775, 789, 799 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Fuller v. City of Oakland, Cal.*,
47 F.3d 1522, 1527, 1528-1529 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 12, 13

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17, 23 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÁTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

# TABLE OF AUTHORITIES

Page Nos.

## CASES

*Hathaway v. Runyon,*
132 F.3d 1214, 1217 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hirase-Doi v. U.S. West Communications, Inc.,*
61 F.3d 777, 780 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hostetler v. Quality Dining, Inc.,*
218 F.3d 798 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McCoy v. Macon Water Authority,*
966 F. Supp. 1209, fn3 (M.D.Ga.,1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mendoza v. Borden, Inc.,*
195 F.3d 1238, 1242 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Meritor Sav. Bank, FSB vs. Vinson,*
477 U.S. 64, 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

*Nichols v. Azteca Restaurant Enterprises, Inc.,*
256 F.3d 864, fn. 10 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Oncale v. Sundowner Offshore Servs., Inc.,*
523 U.S. 75, 80 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 17

*Perry v. Costco Wholesale, Inc.,*
123 Wash.App. 783, 798-799, (Wash.App. Div. 1, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Smith v. Sheahan,*
189 F.3d 529, 533 (7th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Steiner v. Showboat Operating Co.,*
25 F.3d 1459, 1462 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Swenson v. Potter,*
271 F.3d 1184, 1192 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Westvaco Corp. v. United Paperworkers Int'l Union*
AFL-CIO, 171 F.3d 971, 973 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Yamaguchi v. United States Dep't of the Air Force,*
109 F.3d 1475, 1478, 1482 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

iii

# **TABLE OF AUTHORITIES**

**Page Nos.**

**STATUTES**

Title VII of the Civil Rights Act of 1964 . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 8, 11, 12, 13, 14, 15, 16

42 U.S.C.A. §2000 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**RULES**

Federal Rules of Civil Procedure 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**TREATISES AND ENCYCLOPEDIAS**

Kathryn Abrams, *Gender Discrimination and the Transformation of Workplace Norms*
42 Vand. L.Rev. 1183, 1203, 1205 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Susan Estrich, *Sex at Work*
43 Stan. L.Rev. 813, 820 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

C. Geoffrey Weirich, *Employment Discrimination Law*
Ch. 20 at 593 (3d Ed. 2002 Cumulative Supplement) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**TEKER TORRES & TEKER, P.C.**
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

I.

**INTRODUCTION**

On June 9, 2008, Plaintiff Debbie Perez, a Marshal at the Superior Court of Guam filed a Complaint against the Defendant, Superior Court of Guam ("Superior Court") alleging co-worker sexual harassment in violation of Title VII of the Civil Rights Act of 1964. Plaintiff asserts that she was sexually harassed by a co-worker, Superior Court Marshal Alan Ecle, commencing in 2002. Debbie Perez's Deposition Transcript, p. 35, ln. 11 - p. 37, ln. 25; p. 43, ln. 18 - p. 52, ln. 10; p. 57, ln. 8 - p. 63, ln. 9.

On pages 3 to 6 of its Motion for Summary Judgment ("MSJ"), the Defendant sets forth various facts as being "undisputed". They are: that the alleged harassment of Perez started on July 1, 2002; that Perez never reported to any Superior Court supervisor Marshal Ecle's harassing conduct; and that on February 16, 2006, Perez told Superior Court EEO designee, John Taijeron, that Marshal Ecle was harassing her.

Defendant now seeks summary judgment and raises five issues, they are:

(1) Whether the Superior Court is liable for anything that occurred before February 16, 2006 when Perez first reported the alleged harassment to Superior Court;

(2) Whether Superior Court's response to the alleged harassment was unreasonable;

(3) Whether, assuming the Defendant's response was unreasonable, or not Ecle's conduct violated Title VII;

(4) Whether Ecle's conduct toward Perez was "because of...sex".; and

(5) Whether the Superior Court is subject to punitive damages.

The Superior Court contends that it has a zero tolerance policy on sexual harassment. During discovery it was found that the Court had a two tiered discrimination complaint process.

A complainant could file an informal complaint or she could file a formal complaint. Linette Perez's Deposition Transcript, p. 7, ln. 18 - 25; p. 27, ln. 2 - p. 30, ln. 14. Debbie Perez made clear to Taijeron that she was there for help but did not want to file an official complaint. Officer Taijeron did not explain to Debbie Perez the distinction between an official complaint and any other complaint. Debbie Perez had not undergone any recent sexual harassment training by which she should reasonably have known the distinction between an official complaint, unofficial complaint or other sexual harassment procedures and policies of the Superior Court of Guam.

Perez began her employment with the Court in 2001. Debbie Perez's Deposition Transcript, p. 24, ln. 19. The Superior Court does not contend that it provided sexual harassment training in the years 2002 to 2006 attended by Ecle or Perez which explained the Superior Court's sexual harassment policy and procedures and the distinctions between a formal complaint or an informal complaint.

Plaintiff asserts that she confided the harassment to a co-worker, Jennifer Cunha, but did not report the harassment to any of her superiors at the Court until February 16, 2006. Debbie Perez's Deposition Transcript, p. 40, ln. 15-23; p. 48, ln. 2 - p. 50, ln. 19. At that time she met and recounted to the Superior Court's Equal Employment Officer ("EEO"), John Taijeron, that she had been and was being sexually harassed by Alan Ecle. Perez recounted for Officer Taijeron that she had been physically grabbed and fondled against her will by Ecle on numerous occasions amounting to criminal sexual conduct. Debbie Perez's Deposition Transcript, p. 64, ln. 12 - p. 68, ln. 8. Perez recounted numerous incidents. She stated that Ecle would come up from behind and grab her breasts. He would pin her against the wall and push his body up against her. On other occasions he would act in a menacing fashion, stare at her, look at her in a prurient and threatening way indicating he would continue with his unwelcomed and illegal behavior. On

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

occasion he would whisper to her that he wanted to have her and that if he couldn't have her nobody would. Debbie Perez's Deposition Transcript, p. 60, ln. 1 - 13.

Ecle's illegal actions had been going on for nearly four years, off and on. During that four year period Mr. Ecle was twice deployed as he was a member of the Guam Army Guard Reserves. Because Perez had been physically assaulted and victimized by Ecle, she had a reasonable fear of Ecle. When Ecle returned to work he also brought back his illegal sexually harassing behaviors towards Perez. Ecle denies sexual harassment of Perez and a material dispute of fact exists about what actions Ecle engaged in.

On February 16, 2006, Perez sought help to make Ecle stop his harassing behavior. She contacted the Court's EEO John Taijeron. During Perez's interview with Officer Taijeron, Perez recounted numerous incidents of non-consensual physical and sexual assault in the workplace by Ecle. Amazingly, Taijeron determined that Perez was <u>NOT</u> a victim of sexual harassment but asked Ms. Perez if she wanted to file an *official complaint*. John Taijeron's Deposition Transcript, p. 8, ln. 10 - p. 16, ln. 21. Taijeron never conducted an investigation. Taijeron's only action was to report the complaint to the Chief Marshal, Pito Cruz, who said do nothing about Perez's complaint. John Taijeron's Deposition Transcript, p. 17, ln. 9 - p. 19, ln. 17.

On April 18, 2006, after other incidents with Marshal Ecle, Perez again sought out EEO Taijeron. He was unavailable so she met with Officer Christopher Roberto. Roberto was not an EEO but was assigned to the Marshal's special investigations unit. After taking Perez's report he and Perez met with the Chief Marshal, Pito Cruz, who asked Perez if she wanted to file a police complaint. Perez agreed to do so and was escorted to the Hagåtña Station of the Guam Police Department to file a criminal complaint.

Chief Marshal Cruz advised Perez that she needed to be careful and should change her

**TEKER TORRES & TEKER, P.C.**
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

1  daily routine to avoid Ecle. At the April 18th meeting, Perez did file an official complaint against

2  Ecle with the Superior Court of Guam. The Superior Court of Guam never investigated the

3  allegations raised by Perez after the February 16, 2006 meeting with Officer Taijeron. Further,

4  the Superior Court never conducted an investigation after the April 18, 2006 complaint by Perez

5  even though the Marshals who received Perez's allegations stated they both reported them to the

6  Chief Marshal, Pito Cruz, immediately after receiving the February and April complaints.

7  According to Taijeron, the Chief Marshal told him to do nothing about Perez's February

8  complaint because it wasn't a formal complaint. The Chief Marshal in his deposition denied

9  knowledge of Perez's first complaint from February 2006.

10      The Defendant emphasizes that Perez did not make an "official" complaint on February

11  16, 2006 but did on April 18, 2006. That infers that Perez knew or was informed of the

12  distinction between an official complaint and an unofficial complaint. Perez's rationale for not

13  filing an official complaint in February was she thought there would be ramifications within her

14  department against her for accusing a fellow marshal of sexual harassment. Perez had only

15  confided in one other marshal, a female co-worker. She did not want to be ostracized or feel any

16  more isolated than she already did. Perez was also concerned about confidentiality.

17      Perez later filed a timely Title VII employment discrimination complaint with the Equal

18  Employment Opportunity Commission ("EEOC") in Honolulu, Hawaii. The EEOC conducted

19  an investigation into Perez's complaint. After its investigation, it determined that Perez had been

20  a victim of sexual harassment in violation of Title VII of the Civil Rights Act of 1964. Perez was

21  issued a Right to Sue letter. Subsequently, Perez timely filed suit on June 8, 2008.

22  ///

23  ///

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

## II.

### SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate only if the evidence demonstrates "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Anderson* at 248. A fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id*. Further, "the requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment level is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

## III.

### ARGUMENT

**A.     THE SUPERIOR COURT OF GUAM IS LIABLE FOR THE HARASSMENT THAT OCCURRED BEFORE FEBRUARY 16, 2006 BECAUSE ITS RESPONSE WAS UNREASONABLE.**

Plaintiff Perez claims that beginning on or about July 1, 2002, she was a victim of co-worker sexual harassment and subjected to a hostile work environment in violation of Title VII and 42 U.S.C.A. §2000 et seq. Perez claims that the Superior Court of Guam is liable for the behavior of Perez's co-worker Alan Ecle. The Ninth Circuit has held that "(t)o make a prima

facie case of a hostile work environment, a person must show 'that: (1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) *quoting Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir.1995) (internal quotations omitted).

As set forth in the Introduction, Perez recounted many instances of unwlecomed sexual harassment in the workplace that altered the conditions in the workplace because of the severe and pervasive nature of Ecle's conduct over a four year period. Even though there were interruptions in the harassing conduct because Ecle was deployed, his pattern of offensive conduct towards Perez while on the job did not change. The Supreme court has repeatedly said, using the disjunctive "or" that a claim of discrimination based on the infliction of a hostile working environment exists if the conduct is "severe or pervasive." *Faragher* at 799. Perez has made a prima facie case of hostile work environment harassment. In fact, Perez had to complain twice before the Superior Court would help her.

**1. The Superior Court is liable because it failed to take action after learning of the harassment.**

Contrary to the claims of the Defendant, the Superior Court of Guam can, as a matter of law, be made to answer for Alan Ecle's conduct. Defendant asserts that *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 759 (1998), stands for the proposition that "in co-worker harassment cases, a claimant must prove that the employer was actually negligent." Defendant's reliance on *Burlington* for this proposition is incomplete. Defendant cites to part of the opinion where the court discusses the issue of imposing employer liability on account of a supervisor's

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 177-9891-4

acts. The court stated that "…although a supervisor's sexual harassment is outside the scope of employment because the conduct was for personal motives, an employer can be liable, nonetheless, where its own negligence is a cause of the harassment." *Id*. The court went on and stated that "(a)n employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it." *Burlington* at 742, 759 (emphasis added).

It is well established that "once an employer knows or should know of [coworker] harassment, a remedial obligation kicks in." *Fuller* at 1522, 1528. Such an employer will be liable for the hostile work environment created by the coworker unless "the employer … take[s] adequate remedial measures in order to avoid liability. *Yamaguchi v. United States Dep't of the Air Force*, 109 F.3d 1475, 1482 (9th Cir. 1997). The employer's actions should be "reasonably calculated to end the harassment." *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991). After Perez's February 16, 2006 complaint, the Superior Court took no remedial action to address the complaint.

### 2. A Distinction between pre and post February 16, 2006 harassment is specious.

Defendant also cites to the Ninth Circuit for the proposition that "an employer cannot be held liable for misconduct of which it is unaware." *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001). However, the same opinion that defendant relies upon to shield it from liability for Ecle's actions that predate February 16, 2006 plainly holds that "If the employer fails to take corrective action after learning of an employee's sexually harassing conduct, or takes inadequate action that emboldens the harasser to continue his misconduct, the employer can be deemed to have 'adopt[ed] the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy.'" *Id*. Citing *Faragher v. City of Boca Raton*, 524 U.S.

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTNA, GUAM 96910
TELEPHONE (671) 477-9891-4

1    775, 789 (1998).

2       The Superior Court had the opportunity and duty to take remedial action. It could have

3    immediately held training sessions in sexual harassment. It could have addressed the Marshal

4    employees and reiterated its sexual harassment policies. It could have planned to meet with Ecle

5    on or about March 20, 2006 when he returned to work. Instead, it did nothing.

6       **B.**     **THE SUPERIOR COURT'S RESPONSE TO PEREZ'S REPORT OF HARASSMENT WAS UNREASONABLE (AND CAUSED A FEDERALLY**

7                  **RECOGNIZED HARM TO HER).**

8       Perez informed Taijeron on February 16, 2006 that she was being sexually assaulted and

9    harassed by court employee Alan Ecle. Despite being informed that Perez was being harassed

10   and sexually assaulted, the Court took no corrective action prompting Perez to file a second

11   complaint on April 18, 2006. John Taijeron's Deposition Transcript, p. 17, ln. 20 to p. 21, ln.

12   22. Linette Perez's Deposition Transcript, p. 9, ln. 14.

13       Defendant argues that, as a matter of law, the Superior Court cannot be liable "for

14   anything" that occurred before Debbie Perez made her complaint on February 16, 2006. MSJ

15   at p. 9. To support this tenuous contention, Defendant cites to *Hostetler v. Quality Dining, Inc.*,

16   218 F.3d 798 (7th Cir. 2000), for the proposition that "negligence of this nature exposes the

17   employer not to liability for what occurred before the employer was put on notice of the

18   harassment, but for the harm that employer inflicted on the plaintiff as a result of its inappropriate

19   response."

20       Defendant misunderstands Title VII and the significance of the Superior Court's

21   inappropriate response to Perez's February 16 complaint. The Ninth Circuit has clearly held that

22   "Title VII does not permit employers to stand idly by once they learn that sexual harassment has

23   occurred. To do so amounts to a ratification of the prior harassment." *Fuller* at 1522, 1529

**TEKER TORRES & TEKER, P.C.**
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

(emphasis added). The evidence before this court, even if not viewed in a light most favorable to the plaintiff, shows that the Superior Court stood idly by and coasted into liability.

**1.     Perez's February 16 Complaint Was Enough to Put the Defendant on Notice and Require the Superior Court to Take Remedial Action.**

Defendant takes great pains in its memorandum to point out that Perez did not file an "official complaint" on February 16, 2006. This fact is legally insignificant and does not remove the liability incurred by Defendant for failing to take swift action after learning of the harassment on February 16, 2006. It is not the form of the complaint made by Perez that is important, it is the knowledge that the Defendant had and what they didn't do with that knowledge.

Courts have examined Defendant employers that adhere to the formal / informal complaint, discrimination policy and procedure similar to the Superior Court's. A Georgia Federal District court, for instance, stated that "(t)his opinion should not be read to suggest that employers have no responsibility to address sexual harassment complaints until the employee lodges a formal complaint." *McCoy v. Macon Water Authority*, 966 F. Supp. 1209, fn3 (M.D.Ga.,1997).

The Ninth circuit has explicitly held that informal complaints are sufficient to allow liability to attach to an employer who does not respond to sexual harassment it has become aware of. *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, fn. 10 (9th Cir. 2001), stating "(a)lthough these complaints did not follow the formal reporting requirements of [the employer]'s anti-harassment policy, they were sufficient to place the company on notice of the harassment." The efficacy of an informal report of sexual harassment can turn on the size of an employer's organizational structure. *Nichols* at 864, fn. 10. An informal complaint will be sufficient to require an employer's response when an employer's "corporate structure is not so large as to make it impractical for managers to communicate with the corporate office about such important

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

matters as harassment." *Nichols* at 864, fn. 10. The Superior Court is a relatively small self contained organization, one building, one boss, with a personnel office in the building.

The Superior Court took no action after learning of Ecle's harassment of Perez and the harassment continued. This fact prevents the defendant from arguing that is should escape liability for Ecle's actions. The defendant's inaction, as much as Ecle's harassing actions, have given rise to the Plaintiff's claim and requires that Defendant's Motion for Summary Judgment on its liability for pre-February 16, 2006 harassment be denied.

2. **The Action Taken by Court after Receiving Perez's Official Complaint in April 2006 Was Not Adequate to Relive Defendant of Liability.**

Even if this Court were to accept that the Superior Court was under no obligation to take corrective action until it received an official complaint from Perez, the action that the Defendant did take after receiving Perez's formal complaint was not adequate enough to allow the Defendant to escape liability and grant its Motion for Summary Judgment.

The Superior Court received Perez's official complaint in April of 2006. Pito Cruz's Deposition Transcript, p. 12, ln. 5-6. The deposition testimony of Pito Cruz confirms that the Superior Court of Guam took no corrective action after receiving Perez's official complaint. Perez approached Cruz with her official complaint and was, according to Cruz, "really upset" by Ecle's harassment. Pito Cruz's Deposition Transcript, p. 13, ln. 24. Even more troubling, Cruz placed the onus of taking corrective action on the victim, rather than the employer. Cruz told Perez to "be careful" and take "extra security measures." Pito Cruz's Deposition Transcript, p. 15, ln. 19 - 20.

It is undisputed that the Superior Court failed to conduct any meaningful interview with Ecle or take any meaningful steps to address the harassment. The Superior Court's investigation

consisted of leaving some messages with Ecle's wife. Pito Cruz's Deposition Transcript, p. 17, ln. 24 - p. 18, ln. 2. The only interaction Chief Marshal Pito Cruz had with Ecle was when Ecle came to the Court to turn his firearm in after being arrested. Pito Cruz's Deposition Transcript, p. 16, ln. 18 - 20.

Despite his arrest and subsequent resignation, Ecle held re-employment rights. Pito Cruz's Deposition Transcript, p. 18, ln. 24. Despite this fact, the Superior Court's investigation never got off the ground and was stalled by the belief that Ecle's resignation had somehow "terminated" the investigation. Pito Cruz's Deposition Transcript, p. 21, ln. 14 - 15. Cruz admits that he never talked to Ecle about the Perez harassment. Pito Cruz's Deposition Transcript, p. 21, ln. 14 - 15. Cruz also admits that he never took any discipline action against Ecle. Pito Cruz's Deposition Transcript, p. 26, ln. 14-16.

The meager activity that the Superior Court took in reaction to Perez's official complaint did no more to relieve it of liability than its complete inaction following Perez's February 16 complaint. The defendant Superior Court would have the Federal District Court hold that leaving a few messages with a harasser 's spouse and telling the victim to "be careful" is just the sort of remedial action Title VII calls for. Under no reading of the facts as they currently lay before this court can the Defendant's supposed action relive it of liability.

### 3. An Employer Is Not Absolved of Liability Merely Because the Harassment Stopped.

Perez asserts that Ecle's harassment continued even after informing Taijeron on February 16, 2006 that she was groped and assaulted by Ecle.[1] Defendant maintains, however, that the

---

[1]We discuss staring later in this Opposition.

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

court's failure to act was reasonable because Ecle's and Perez's "work assignments would have

kept them separated." MSJ at p. 10. Defendant boldly argues that it acted reasonably after

learning of the harassment because Ecle went on military leave shortly after and "the earliest the

court could have done something to separate the two or investigate was March 20, 2006, when

they were both back at the court." This contention grossly skews the established caselaw and

ignores the fact that it still failed to act on Perez's Complaint after March 20, 2006. Because

Ninth Circuit cases stand for the proposition that an employer's actions will not necessarily shield

Defendant from liability if harassment continues, "it does not follow that the employer's failure

to act will be acceptable if harassment stops." *Fuller* at 1522, 1528-1529 (emphasis added).

Even if the happy coincidence of divergent work schedules kept Ecle away from Perez,

which it did not, this fact does not excuse the Defendant's inaction or serve as a measure of

successful action. The Ninth circuit has already carefully gutted the defendant's argument. In

*Fuller*, the court stated that:

> "The fact that harassment stops is only a test for measuring the efficacy of a
> remedy, not a way of excusing the obligation to remedy. Once an employer knows
> or should know of harassment, a remedial obligation kicks in. That obligation will
> not be discharged until action-prompt, effective action-has been taken.
> Effectiveness will be measured by the twin purposes of ending the current
> harassment and deterring future harassment-by the same offender or others. If 1)
> no remedy is undertaken, or 2) the remedy attempted is ineffectual, liability will
> attach.
>
> Putting it another way, even if inaction through some Orwellian twist is described
> as a "remedy," it will fail the deterrence prong of the *Ellison* test [2] whether or not
> the individual harasser has voluntarily ceased harassment. Nor can inaction fairly
> be said to qualify as a remedy "reasonably calculated to end the harassment." Title

---

[2]

In *Ellison* the Ninth Circuit held that the effectiveness of an employer's disciplinary and remedial action after learning of sexual harassment will be measured by the twin purposes of ending the current harassment and deterring future harassment-by the same offender or others. *Ellison* at 882.

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

VII does not permit employers to stand idly by once they learn that sexual harassment has occurred. To do so amounts to a ratification of the prior harassment. We refuse to make liability for ratification of past harassment turn on the fortuity of whether the harasser, as he did here, voluntarily elects to cease his activities, for the damage done by the employer's ratification will be the same regardless.

The(defendant employer's) argument reflects a fundamental misunderstanding about Title VII. It is the existence of past harassment, every bit as much as the risk of future harassment, that the statute condemns. Employers have a duty to express strong disapproval of sexual harassment, and to develop appropriate sanctions. *Fuller* at 1528-1529 (internal quotations, explanations, and citations omitted).

The Superior Court took no action after learning of Ecle's harassment of Perez and the harassment continued. This fact prevents the defendant from arguing that is should escape liability for Ecle's actions. The defendant's inaction, as much as Ecle's harassing actions, have given rise to the Plaintiff's claim and requires that Defendant's Motion for Summary Judgment on its liability for post-February 16, 2006 actions be denied.

C.  **ECLE'S CONDUCT BETWEEN FEBRUARY 16, 2006 AND APRIL 18, 2006 WAS SEVERE AND PERVASIVE ENOUGH TO CONSTITUTE A VIOLATION OF TITLE VII.**

Defendant argues that Ecle's conduct that occurred between February 16, 2006 and April 18, 2006 was not severe or pervasive enough to constitute a violation of Title VII. MSJ 12. In addition, Defendant contends that Ecle's "staring" at Perez is not related to his earlier sexual assault of Perez and is therefore not actionable as harassment on account of sex. Defendant's position in this regard is untenable under established case law.

In determining whether a plaintiff has met the burden of alleging sufficient harassment, the Supreme Court in a same sex harassment case reaffirmed "that the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.' " *Oncale v. Sundowner Offshore Servs., Inc.*, 523

**TEKER TORRES & TEKER, P.C.**
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

U.S. 75, 80 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. at 23). The hostile work environment is evaluated based on the totality of the circumstances. *Harris* at 17, 23. "Under the totality of the circumstances analysis, the district court should not carve the work environment into a series of discrete incidents." *Burns v. McGregor Elec. Indus., Inc.*, 995 F.2d 559, 564 (8th Cir. 1992). Rather, "each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created may exceed the sum of the overall scenario." *Id.* Moreover, "[d]iscriminatory behavior comes in all shapes and sizes, and what might be an innocuous occurrence in some circumstances may, in the context of a pattern of discriminatory harassment, take on an altogether difference character, causing a worker to feel demeaned, humiliated, or intimidated on account of her gender." *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1109 (9th Cir. 1998) (citing *Meritor Sav. Bank*, 477 U.S. at 65 (noting that employees have the "right to work in an environment free from discriminatory intimidation, ridicule, and insult")). The inquiry is both fact intensive, and contextually specific. It "requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale* at 80.

Despite the urging of the Defendant, no act can be considered in isolation. "In sexual harassment cases, the courts must consider the alleged conduct in context and cumulatively." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1242 (11th Cir. 1999). The ongoing severe and pervasive nature of Ecle's conduct was confirmed by the diagnosis of post traumatic stress disorder made by her psychiatrist. Dr. Archana Leon Guerrero's Deposition Transcript, p. 14, ln. 2 - 18; p. 16, ln. 6 - p. 17, ln. 19. The Superior Court does not dispute Dr. Leon Guerrero's assessment.

///

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

### 1. Courts are directed to look at the harassing behavior through Eyes of the Victim.

Defendant Perez's gender cannot be ignored in the determination of whether Ecle's behavior was severe, pervasive, and actionable under Title VII. When courts simply ask if the "reasonable person" would find alleged instances of workplace harassment to be sufficiently severe or pervasive to alter the conditions of employment, those courts are in fact adopting the perspective of the "reasonable harasser," and systematically excluding the experiences of the victims of sexual harassment. *See* Kathryn Abrams, *Gender Discrimination and the Transformation of Workplace Norms*, 42 Vand. L.Rev. 1183, 1203 (1989); Susan Estrich, *Sex at Work*, 43 Stan. L.Rev. 813, 820 (1991); The Ninth circuit has explicitly recognized that "a sex-blind reasonable person standard tends to be male-biased and tends to systematically ignore the experiences of women" *Ellison* at p. 872, 879.[3]

A material dispute exists as to the harassing behavior of Ecle since he denies Perez's allegation and, therefore, summary judgment on the effect of his staring conduct limiting the liability of the Superior Court must be denied.

///

---

[3]
One writer explains: "While many women hold positive attitudes about uncoerced sex, their greater physical and social vulnerability to sexual coercion can make women wary of sexual encounters. Moreover, American women have been raised in a society where rape and sex-related violence have reached unprecedented levels, and a vast pornography industry creates continuous images of sexual coercion, objectification and violence. Finally, women as a group tend to hold more restrictive views of both the situation and type of relationship in which sexual conduct is appropriate. Because of the inequality and coercion with which it is so frequently associated in the minds of women, the appearance of sexuality in an unexpected context or a setting of ostensible equality can be an anguishing experience." Abrams, *Gender Discrimination and the Transformation of Workplace Norms*, 42 Vand.L.Rev. 1183, 1205 (1989). Quoted in *Ellison* at 872, fn 9.

**TEKER TORRES & TEKER, P.C.**
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

**D.    ECLE'S HARASSMENT AFTER FEBRUARY 16, 2006 WAS "BECAUSE OF SEX".**

Defendant broadly states that staring cannot give rise to a Title VII action. It is well established that "(a)lthough harassment must be because of gender, it need not be sexual in nature to be actionable." *Avdyli v. Barnhart*, Not Reported in F.Supp. 2d, 2007 WL 57601, pg 12 (N.D. Ill. 2007) quoting C. Geoffrey Weirich, *Employment Discrimination Law*, Ch. 20 at 593 (3d Ed. 2002 Cumulative Supplement). In fact, courts routinely use evidence of following and/or staring to support a finding of sufficient severity or pervasiveness. See *Cross v. Alabama Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1495 (11th Cir. 1995) ( "glaring looks, piercing looks"); *Westvaco Corp. v. United Paperworkers Int'l Union*, AFL-CIO, 171 F.3d 971, 973 (4th Cir. 1999) ("stare at her for periods of ten to twenty minutes"); *Yamaguchi* at 1475, 1478 ("stare at her during work"); *Hathaway v. Runyon*, 132 F.3d 1214, 1217 (8th Cir. 1997) (stared at her with a menacing look); *Hirase-Doi v. U.S. West Communications, Inc.*, 61 F.3d 777, 780 (10th Cir. 1995) ("threatening and intimidating stares); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1462 (9th Cir. 1994) ("stares, glares, snickers, and comments"); *Perry v. Costco Wholesale, Inc.*, 123 Wash.App. 783, 798-799, (Wash.App. Div. 1, 2004). ( "made eye contact... and glared at her menacingly.")

Furthermore, overtly sexual behavior is not necessary to establish a hostile work environment claim. "Subsequent actions of a harasser that, by themselves might not constitute harassment, may be viewed as such following extreme actions that would reasonably lead the victim to believe the harasser could do anything." *Perry* at 799. Though Defendant may be correct that staring in and of itself is not harassment sufficient to establish a hostile work environment, *Perry* makes it plain that Perez's interpretation of Ecle's staring— when viewed in

**TEKER TORRES & TEKER, P.C.**
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 177-9891-4

light of the earlier sexual assaults perpetrated against Perez by Ecle— supports a hostile work environment claim.

"It makes no difference that the assaults and the epithets sounded more like expressions of sex-based animus rather than misdirected sexual desire (although power plays may lie just below the surface of much of the latter behavior as well). Either is actionable under Title VII as long as there is evidence suggesting that the objectionable workplace behavior is based on the sex of the target." *Smith v. Sheahan*, 189 F.3d 529, 533 (7th Cir.1999) citing *Oncale* at 81.

"We believe the most recent statements by the Seventh Circuit dispel the notion that hostile work environment claims are limited solely to situations of a sexual nature; rather, actionable harassment 'encompasses all forms of conduct that unreasonably interfere with an individual's work performance or create an intimidating, hostile, or offensive work environment.' "*Curde v. Xytel Corp.*, 912 F.Supp. 335, 340 (N.D. Ill. 1995) citing *Doe v. R.R. Donnelley & Sons*, 42 F.3d 439, 443 (7th Cir. 1994), citing *Meritor*, 477 U.S. at 64.

## IV.

## CONCLUSION

For the reasons set forth above, the Superior Court's Motion for Summary Judgment should be denied in its entirety with the exception of the punitive damages argument which is not contested.

Dated this 26th day of May, 2009.

TEKER TORRES & TEKER, P.C.

By: _____
PHILLIP TORRES, ESQ.
*Attorneys for Plaintiff*