# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF GUAM

DEBBIE ANN REYES PEREZ,

    Plaintiff,

v.

SUPERIOR COURT OF GUAM,

    Defendant.

Civil Case No. 08-0007

ORDER GRANTING MOTION FOR RECONSIDERATION;
DENYING IN PART AND GRANTING IN PART RECONSIDERED MOTION FOR SUMMARY JUDGMENT;
and DENYING MOTIONS *IN LIMINE*

Now before the Court is Defendant Superior Court of Guam's Motion for Reconsideration and Motions *In Limine*. The Court finds the motions suitable for disposition without oral argument and Defendant's request for Oral Argument is DENIED. The Court has again carefully reviewed the parties' briefs and the relevant legal authority and Defendant's Motion for Summary Judgment is DENIED IN PART and GRANTED IN PART. In addition, the Court finds Defendant's motions *in limine* premature and they are accordingly DENIED without prejudice to bringing them at a later date.

## BACKGROUND

This case arises out of allegations of sexual harassment. Plaintiff Debbie Ann Reyes Perez[1] worked as a Deputy Marshal for Defendant Superior Court of Guam beginning in September 2001. (Comp. at 9.) Plaintiff alleges that from 2002 to 2006, she was subjected to a hostile work environment as a result of unwanted sexual advances from her coworker, Deputy Marshal Alan Ecle. (*Id.* at 10–11.) On February 16, 2006, Plaintiff complained about the harassment to Marshal John Taijeron, an Equal Employment Office ("EEO") official at the Superior Court. (Certeza Depo. at 65; Taijeron Depo. at 9.) Plaintiff told Marshal Taijeron that she and Marshal Ecle went to lunch one day and after lunch he "pulled to the side of the road by

---

[1] Plaintiff is titled "Debbie Ann P. Certeza" in her deposition but "Debbie Ann Reyes Perez" in the caption of the complaint.

the overlook and began to touch her or began to kiss her." (Taijeron Depo. at 14.) Plaintiff also described another incident where Marshal Ecle pinned her arms to her side and "grabbed" her breasts. (*Id.* at 14, 16.) Marshal Taijeron did not think these incidents amounted to sexual harassment. (*Id.* at 14.) Marshal Taijeron told Chief Marshal Pito Cruz about Plaintiff's concerns and no action was taken to remedy the situation.

On April 18, 2006, Plaintiff filed a police report and an official complaint against Marshal Ecle with the Superior Court of Guam. (Certeza Depo. at 74.) Marshal Ecle was arrested, booked, and released and returned to work the following day. (*Id.* at 76.) Plaintiff's work assignment was temporarily changed to limit her contact with Marshal Ecle but she still came into contact with him. (*Id.* at 77–78.) Subsequently, Marshal Ecle was placed on administrative leave and he voluntarily resigned shortly thereafter. (*Id.* at 79.)

Plaintiff later filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Plaintiff a Right to Sue and she subsequently filed suit in this court on June 8, 2008 alleging that the Superior Court of Guam violated Title VII, 42 U.S.C. § 2000e-2(a)(1) when it failed to respond to her complaints of sexual harassment. Now before the Court is Defendant's motion for summary judgment. The Court will discuss additional specific facts as required in the analysis.

## ANALYSIS

### A.   Motion for Summary Judgment Legal Standard.

Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Rule 56 provides that a moving party is entitled to a judgment as a matter of law "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986) (holding that summary judgment burden may be fulfilled with or without supporting evidence). Once the moving party has met its burden, the opposing party "must–by affidavits or [otherwise admissible evidence]–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The evidence of the non-movant is to be believed, and

2

all justifiable inferences are to be drawn in his favor." *Id.* at 255. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ruling on a motion for summary judgment . . . ." *Id.*

**B.  Title VII "Hostile Work Environment" Legal Standard.**

Defendant moves for summary judgment arguing that it cannot be held liable for violation of Title VII sexual harassment as a matter of law. Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against any individual with respect to, among other things, his or her employment conditions because of his or her sex. 42 U.S.C. § 2000e-2(a) (2006). "Sexual harassment is a form of sex discrimination. . . . in violation of Title VII." *Swenson v. Potter*, 271 F.3d 1184, 1191 (9th Cir. 2001).

To show sexual harassment based on the theory that the harassment created a "hostile work environment" the plaintiff must demonstrate: "(1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995).

"Where harassment by a co-worker is alleged, the employer can be held liable only where 'its own negligence is a cause of the harassment.' " *Swenson*, 271 F.3d at 1191. Moreover, an employer generally may only be held liable if it knows or should have known about the alleged harassment. *Fuller*, 47 F.3d at 1527; *Swenson*, 271 F.3d at 1192 ("The employer's liability, if any, runs only from the time it 'knew or should have known about the conduct and failed to stop it.' "). However, "[o]nce an employer knows or should know of harassment, a remedial obligation kicks in." *Fuller*, 47 F.3d at 1528. "That obligation will not be discharged until action-prompt, effective action-has been taken." *Id.* The effectiveness of the action must end the current harassment *and* deter future harassment. *Id.* (emphasis added). Failure to take *any* action can neither serve to deter future harassment nor can it "fairly be said to qualify as a remedy 'reasonably calculated to end the harassment.' " *Id.* at 1529; *compare Swenson* at 1195–96 ("Moreover, the harassment [in *Swenson*], unlike that in *Fuller*, stopped as a result of the employer's intervention, not by the harasser's voluntary and independent decision."). Inaction by the employer "amounts to a ratification of the prior harassments." *Fuller*, 47 F.3d at 1529. Accordingly, an employer that takes unreasonable or ineffective remedial measures

cannot avoid liability even if the harassment stops for other reasons. *Id.*

## C. Defendant May Be Liable Under Title VII.

### 1. Defendant's Failure to Take Any Remedial Action May Subject it to Liability for Acts that Occurred Prior to Its Knowledge of the Allegations.

As an initial matter, Defendant argues that it cannot be held liable, under any circumstances, for any alleged harassment that occurred before it knew or had reason to know of the allegations. As discussed above, an employer has an immediate obligation to take steps to remedy allegations of harassment once it knows or has reason to know of the harassment. *Fuller*, 47 F.3d at 1528. An employer's failure to take *any* remedial action in response to serious allegations "amounts to a ratification of the prior harassments." *Id.* at 1529. In *Fuller*, the court found that the allegedly harassing conduct *prior* to the employer's knowledge created a hostile work environment, while the allegations *following* the employer's knowledge did *not* amount to a hostile environment. *Id.* at 1528. The Court held that the employer's failure to take *any* remedial action upon knowledge of alleged harassment ratifies the past harassment even if the harassment ceases for other reasons. *Id.* at 1529 (defendant's argument that it could not be held liable for pre-notice harassment, even if the employer then failed to do *anything* about the harassment, "reflects a fundamental misunderstanding about Title VII. It is the existence of past harassment, every bit as much as the risk of future harassment, that the statute condemns."); *see also Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 968 (9th Cir. 2002) ("employers are liable for harassing conduct by non-employees 'where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct.' ").

Here, it is undisputed that Defendant did not know or have reason to know of the alleged harassment until February 16, 2006, the date that Plaintiff first complained to Marshal Taijeron. As such, Defendant would generally only be potentially liable for harassment that occurred after February 16, 2006. However, Plaintiff argues that Defendant may be liable for the alleged harassment that occurred prior to its knowledge because Defendant failed to take any meaningful remedial action in response to Plaintiff's complaints. The Court agrees. Plaintiff complained to Marshal Taijeron on February 16, 2006. Marshal Taijeron, an EEO official, construed Plaintiff's allegations as "a bunch of horse playing" and a way for those in the Marshals division "to

AO 72
(Rev. 08/82)

Case 1:08-cv-00007   Document 60   Filed 12/07/2009   Page 4 of 9

alleviate stress . . . by joking with other personnel." (Taijeron Depo. at 15–16.) Marshal Taijeron told Chief Marshal Pito Cruz about Plaintiff's complaints but neither Marshal Taijeron nor Chief Marshal Cruz took *any* remedial action. (*Id.* at 17.) Instead, Chief Marshal Cruz told Marshal Taijeron: "what are we to do? We can't force [Plaintiff] to make any [EEOC] complaints if she doesn't want to . . . ." (*Id.* at 17.) The Court cannot find as a matter of law that no remedial response is reasonable, or "not unreasonable," as Defendant's request.

Defendant insists that *Swenson* "completely sacked" *Fuller's* ratification proposition because the court made the following statement in a footnote: "Plaintiff's council argued below that by taking *inadequate* remedial action, the employer ratifies (and becomes responsible for) past misconduct. We reject this contention." *Swenson*, 271 F.3d at 1192 n.6 (emphasis added) (relying on *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 759 (1998)). First, the Court notes that *Fuller* has not been overruled. Second, the footnote is consistent with *Fuller*. In *Fuller*, the Court stated that inaction by the employer "amounts to a ratification of the prior harassments." *Fuller*, 47 F.3d at 1529. In *Swenson*, the court held that when an employer takes appropriate remedial action, even if inadequate, they cannot be retroactively liable for conduct of which they were unaware. *Swenson*, 271 F.3d at 1197. In *Swenson*, the employer commenced a prompt investigation, told the alleged harasser to stay away from the complainant, and made clear that sexual harassment was not tolerated, but ultimately concluded that the allegations were unfounded. *Id.* at 1189. Despite, the employer's conclusion that a formal harassment charge could not be pursued, the employer took remedial steps appropriate to the allegations. *Id.* at 1193–94 ("the most significant measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified."). Moreover, the harassment ceased because of the employer's actions. *Id.* 1195–96 (distinguishing *Fuller*, where harassment stopped not as a result of the employer's action, but because of the harasser's own decision). In contrast to *Swenson*, here, Defendant did not commence an investigation, did not speak with the alleged harasser, and rather than make clear that sexual harassment was not tolerated, it seemingly endorsed the allegations as "mere horseplay."

Defendant next contends that because Plaintiff was vague about the remedial actions she wanted, Defendant's decision to "monitor the situation" was a reasonable remedy, relying on

*Hardage v. CBS Broadcasting Inc.*, 427 F.3d 1177 (9th Cir. 2005). (Mot. at 11.) Defendant's reliance is misplaced. The *Hardage* court held that when the *allegations* of sexual harassment were vague and the complainant specifically asked the supervisor *not* to investigate, it was reasonable for the employer not to investigate. 427 F.3d at 1186. In contrast, here, Plaintiff's allegations of harassment were not vague. Plaintiff articulated at least two incidents of specific assaults of a physical and sexual nature. Moreover, Defendant does not allege that Plaintiff asked Marshal Taijeron not to *investigate* the matter. Rather, Defendant asserts that Plaintiff did not want to file an EEOC complaint. The requests are not equivalents nor did Plaintiff's refusal to file an EEOC complaint relieve Defendant of the duty to look into the serious allegations. "Monitoring the situation" was not proportionate to the seriousness of the alleged offense. *See Hardage*, 426 F.3d at 1186 (quoting *Ellison*, 924 F.2d at 882).

In sum, the Court cannot find as a matter of law that Defendant's response to Plaintiff's complaints was reasonable. A reasonable jury could find that the Defendant's failure to respond was unreasonable and Defendant may be liable for the allegations of past harassment under the *Fuller* ratification theory.

2. **The Allegations Are Severe or Pervasive Enough to Create a Hostile Work Environment.**

Here, Plaintiff was clearly "subjected to verbal or physical conduct of a sexual nature" and the "conduct was unwelcome." The alleged harasser, Marshal Ecle, pulled his car over during lunch one day and tried to "touch and kiss" Plaintiff. (Taijeron Depo. at 14.) Marshal Ecle also pinned Plaintiff's arms behind her back and tried to touch her breasts and whispered another time that he was going to "have her one way or another." (*Id.* at 14; Certeza Depo. at 45, 60.) In addition, Plaintiff refused Marshal Ecle's advances and reported the conduct. (Certeza Depo. at 45, 65; Taijeron Depo. at 14.) Accordingly, there is no genuine issue as to whether the alleged conduct was sexual in nature or unwelcome. The remaining question is whether this conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."

Whether the alleged acts are sufficiently severe and pervasive to constitute a hostile work environment is a question of law. *Fuller*, 47 F.3d at 1527. "[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of

the conduct." *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991). The environment must be both subjectively and objectively hostile/abusive based on all of the circumstances. *Fuller*, 47 F.3d at 1528. The environment is objectively hostile or abusive if "a reasonable woman would feel her working environment had been altered," while it is subjectively abusive if the allegedly harassed employee actually felt that way. *Id.*

Here, Plaintiff complained to EEO official, John Taijeron, on February 16, 2006. (Comp. at 14.) Following is an excerpt of Mr. Taijeron's deposition testimony relaying what Plaintiff complained about on that date.

    Q    [W]hy don't you tell us what Debbie Perez's specific complaints against Alan Ecle were, as you recall.

    A    She alleges that 2002, 2003, she and Ecle, Deputy Marshal Ecle, had went out to lunch up - this is the first incident, they went out and ate lunch up at the Top O' The Mar. And after they had lunch, on the way back to work, the Courthouse, she claimed that Ecle had pulled to the side of the road by the overlook and began to touch her or began to kiss her. She claimed that she shoved him, she pushed him away, told him, "no", and from there, they go back to Courthouse. And since then there was - she claims that there was other incidents or other occasions that Ecle would make sexual advantages towards her.

    Q    Pinned her down?

    A    Yes.

    Q    From behind?

    A    Yes.

. . .

    Q    Did she also tell you though that he pinned her from behind and grabbed her breast, did she say that to you?

    A    I believe - yes. Yes, sir.

    Q    Okay. And she didn't like that at all?

    A    She said she didn't - yeah she, didn't like it, I guess.

(Taijeron Depo. at 13–16.)

Subsequent to her complaint to Mr. Taijeron, Plaintiff claims that when she came into

contact with Marshal Ecle he stared at her menacingly and made her feel unsafe. (*See* Certeza Depo.) The Court finds that the alleged incidents that occurred prior to February 16, 2006 are sufficiently severe or pervasive to alter the work environment of a reasonable woman. Any person who has their arms pinned behind their back at work by a co-worker and their breast "grabbed" will certainly feel that their work environment has been altered. However, the facts before the Court do not demonstrate that the incidents that occurred after February 16, 2006, alone, amount to an altered work environment.

**D.     Punitive Damages.**

Plaintiff concedes that Defendant cannot be liable for punitive damages. Accordingly, the motion for summary judgment is GRANTED IN PART and Plaintiff is not entitled to punitive damages.

**E.     Request for List of Undisputed Facts.**

Defendant seeks an order verifying the undisputed facts in this case pursuant to Federal Rule of Civil Procedure 56(d). Rule 56(d) provides that "If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue. The court should so determine by examining the pleadings and evidence before it and by interrogating the attorneys. It should then issue an order specifying what facts — including items of damages or other relief — are not genuinely at issue. The facts so specified must be treated as established in the action."

The undisputed facts are as follows:

1.  Defendant did not know or have reason to know of the alleged harassment until February 16, 2006, the date that Plaintiff first complained to Marshal Taijeron. (Certeza Depo. at 63.);

2.  Marshal Ecle did not physically or sexually touch Plaintiff after February 16, 2006 (*Id.* at 74.);

3.  Marshal Ecle was on leave the day that Plaintiff made her official EEOC complaint;

4.  Plaintiff and Marshal Ecle only worked on the same day 15 times (12 full days and 3 half days) following Plaintiff's complaint; and

5. Marshal Ecle resigned from the Superior Court on April 18, 2006.

**IT IS SO ORDERED.**

Dated: December 7, 2009

ALEX R. MUNSON
UNITED STATES DISTRICT JUDGE